STATE, RESPONDENT, *v.* REED, APPELLANT.

(No. 5,141.)

(Submitted October 20, 1922. Decided November 13, 1922.)

[210 Pac. 756.]

*Criminal Law—Homicide—Trial—Presence of Defendant—Matter of Record—Evidence—Reputation—Inadmissibility—Settlement of Instructions—Appeal.*

Criminal Law—Costs Incident to Prosecution not Part of Judgment.
    1. In the absence of statute permitting it, the costs incident to a prosecution for crime cannot be added to the judgment.

Same—Homicide—Presence of Defendant at Trial must Appear from Record.
    2. Under the constitutional and statutory provisions applicable, a defendant charged with crime must be present throughout the entire trial, including the rendition of the verdict, and the fact of his presence must be made to appear from the record.

[65 Mont. 51.]

Same—Presence of Defendant at Trial—Waiver.
   3.   One charged with crime . cannot waive his right to be present
   at his trial.

Same—Presence of Defendant at Trial not Shown by Record—Reversal of
   Judgment.
   4.   Minutes of the trial court in a capital case examined and *held*
   not to show even by reasonable inference that defendant or his coun-
   sel was present during the trial of the cause, in disregard of the stat-
   utory provisions entitling defendant to a reversal of the judgment.

Same—Presence of Defendant at Trial—Substantial Right of Defendant.
   5.   The presence of defendant at his trial for crime is a matter which
   affects the substantial rights of both plaintiff and defendant and
   therefore the provision of section 12125, Revised Codes of 1921, re-
   quiring the supreme court to give judgment on appeal without regard
   to technical errors or defects not affecting the substantial rights of
   the parties, has no application.

Same—Homicide—Self-defense—Evidence—Inadmissible Evidence.
   6.   In a prosecution for homicide in which defendant, who owned
   lands adjoining those of deceased and who shot the latter in an al-
   tercation over the closing of a road by a fence, pleaded self-defense,
   admission of evidence that defendant had denied permission to certain
   persons to cross the land fenced by him and that others had remon-
   strated with him for closing the road, without avail, *held* prejudicial
   error.

Same—Reputation of Defendant for Violence—When Inadmissible—Fail-
   ure to Object—Effect on Appeal.
   7.   While the admission of evidence during presentation of the state's
   case to the effect that the reputation of defendant for violence, vin-
   dictiveness and quarrelsomeness was bad, was error, in the absence of
   appropriate objection to 'its introduction, the error is not subject to
   review on appeal.

Same—Trial—Settlement of Instructions—Failure to Object—Effect on
   Appeal.
   8.   Failure of the defendant to object to any part of the charge at the
   settlement of the instructions or request any special instruction bars
   defendant from complaining on appeal that the court erred in failing to
   give a special instruction.

*Appeals from District Court, Musselshell County; George A.
Horkan, Judge.*

L. E. REED was convicted of murder, and from the judgment
of conviction and from order denying his motion for new trial,
he appeals.   Reversed and remanded.

---

   3.   Waiver by accused of right to be present at trial on felony
charge, see notes in 28 Am. Dec. 629; 68 Am. Dec. 219; Ann. Cas.
1913C, 1146; Ann. Cas. 1918E, 375.
   Waiver of right of accused to be present at rendition of verdict, see
notes in 13 Ann. Cas. 1213; Ann. Cas. 1915B, 447.

*Mr. S. P. Wilson* (Counsel for Appellant in Supreme Court but not in the District Court), submitted a brief and argued the cause orally.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. L. A. Foot,* Assistant Attorney General, for the State, submitted a brief; *Mr. Foot* argued the cause orally.

Appellant attacks the minutes of the court, contending that they do not affirmatively show the presence of the appellant during the trial and when the verdict was received. While criticism may justly be made of the manner in which the minutes of the trial were kept, yet there is no showing that appellant was in any manner prejudiced by them. Both the state and the appellant were represented by very able and eminent counsel and it would be absurd to believe that such counsel or the learned trial judge would have allowed a felony charge to proceed to trial without the presence of the accused.

The minutes do affirmatively show that he was present when the defense commenced its case, because he was the first witness called on his own behalf, and that he was present when the verdict was returned because he was at that time delivered into the custody of the sheriff, he having previously been at liberty under bail. This sufficiently shows that appellant was present when the verdict was received. (*State* v. *Hall,* 55 Mont. 162, 188, 175 Pac. 267; *Lawson* v. *Territory,* 8 Okl. 1, 56 Pac. 698, 701.) Even if he was absent when the verdict was returned, it was voluntary on his part. The record shows that he was at liberty on bail, and if he voluntarily absented himself when the verdict was returned, he cannot now avail himself of his own wrong. (*Sherrod* v. *State,* 93 Miss. 774, 20 L. R. A. (n. s.) 509, 47 South. 554; *Davidson* v. *State,* 108 Ark. 191, Ann. Cas. 1915B, 436, 158 S. W. 1103; see, also, note in Ann. Cas. 1913C, 1146; 27 R. C. L. 845, sec. 17.)

It is true that witnesses for the state were allowed to testify relative to the reputation of appellant for being violent, vindictive and quarrelsome. It was the privilege of appellant

to have this evidence excluded until he himself put his character in issue, but he saw fit to allow it to go in without a single objection. Having done so, he cannot now rely upon it as an error and have it reviewed. (*State* v. *Hill,* 46 Mont. 24, 126 Pac. 41; *City of Philipsburg* v. *Weinstein,* 21 Mont. 146, 53 Pac. 272; *Mares* v. *Dillon,* 30 Mont. 117, 75 Pac. 963; 3 C. J. 742, sec. 636.)

MR. CHIEF COMMISSIONER LEIPER prepared the opinion for the court.

The defendant (appellant herein) was convicted of the crime of murder. A motion for a new trial, based upon all of the grounds enumerated in the statute, was overruled. The defendant appeals from the judgment of conviction and from the order denying his motion for new trial.

Fourteen specifications of error are set forth in the defendant's brief. We will consider these several specifications under five heads, as follows:

First. Defendant contends that the judgment is erroneous, [1] in that it includes, as a part of the penalty, the payment of the costs incident to the prosecution. After fixing the term of imprisonment the judgment concludes as follows: ".And that he pay the costs of this prosecution." Defendant's contention must be sustained. This question is not a new one in this jurisdiction. The costs may not be added to a judgment unless provision is made therefor by statute. No such provision is made, and therefore the judgment is erroneous in so far as it relates to the costs. We adhere to the rule announced in the case of *State* v. *Stone,* 40 Mont. 88, 105 Pac. 89.

Second. It is earnestly contended that the record in this [2] case does not show that the defendant was present during the whole of the trial herein; that the record does not disclose that the jury were all present at the time of the return of the verdict; that the record does not show that inquiry was made to ascertain whether or not the verdict rendered was the verdict of the jury; that the record does not disclose that the

defendant was present at the time of the rendition of the verdict; and that the judgment is therefore erroneous.

Section 16, Article III, of the Constitution of the state of Montana, provides: "In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel; to demand the nature and cause of the accusation; to meet the witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed, subject to the right of the state to have a change of venue for any of the causes for which the defendant may obtain the same."

Section 11931, Revised Codes of 1921, provides: "The defendant must be personally present at the trial; but if for misdemeanor, the trial may be had in the absence of the defendant; if his presence is necessary for any purpose, the court may, upon application of the county attorney, by an order or warrant, require the personal attendance of the defendant at the trial."

Section 12018 Revised Codes of 1921, provides in part as follows: "If charged with a felony, the defendant must, before the verdict is received, appear in person. * * * "

Section 12017, Revised Codes of 1921, provides: "When the jury have agreed upon their verdict, they must be conducted into court by the officer having them in charge. Their names must then be called, and if all do not appear, the rest must be discharged without giving a verdict. In that case the action may be again tried at the same or another term or session."

Section 12019, Revised Codes of 1921, provides: "When the jury agree upon a verdict, they must be brought into court and their names called by the clerk, and if all be present, their foreman must deliver their verdict to the court, who may, with their consent, in their presence, correct the same as to matters of form. The court must deliver the verdict to the clerk, who must file the same, and then read the same to the jury, and

ask them if the verdict as recorded is their verdict; if all of the jury in the case of a felony, or two-thirds of their number in the case of a misdemeanor, assent thereto, they must be discharged.''

What is meant by the word ''trial'' as used in section 11931, *supra*, the court, speaking through Mr. Chief Justice Brantly in the case of *State* v. *Spotted Hawk*, 22 Mont. 33, 55 Pac. 1026, says: ''The word 'trial' when used in connection with criminal proceedings, means proceedings in open court after the pleadings are finished and it is otherwise ready, down to and including the rendition of the verdict.'' To the same effect see *State* v. *Koch*, 33 Mont. 490, 8 Ann. Cas. 804, 85 Pac. 272.

The receipt of the verdict is a part of the trial, and under the plain provisions of our statute, the defendant must be present throughout the entire trial. Not only must the defendant be present, but the fact of his presence must be made to appear from the record. Neither may the defendant waive [3] this right to be present. This court, speaking through Mr. Justice Holloway, in the case of *State* v. *Vanella*, 40 Mont. 326, 20 Ann. Cas. 398, 106 Pac. 364, among other things, says: ''The interest of the state in the life of every citizen extends to one who is on trial for a capital offense, and therefore it is a principle of law, recognized everywhere, that after indictment returned or information filed, nothing shall be done by the court in the case in the absence of the accused. (*Lewis* v. *United States*, 146 U. S. 370, 36 L. Ed. 1011, 13 Sup. Ct. Rep. 536 [see, also, Rose's U. S. Notes].) And the courts are quite unanimous in holding that the right of the accused to be present at all times during his trial is one which the state does not permit to be waived. The jurisdiction of the court to try the accused is derived from the law, and the consent of the accused cannot confer jurisdiction if the court does not have it; and therefore the right of the defendant to be tried by a court having jurisdiction is one which is not waived by failure to make objection at the trial. It is to rights of the

character of these that the principle quoted above is applicable. In other words, the rights guaranteed to one accused of crime fall naturally into two classes: (a) Those in which the state, as well as the accused, is interested; and (b) those which are personal to the accused, which are in the nature of personal privileges. Those of the first class cannot be waived; those of the second may be." And in the same case, this court quotes with approval the language used by the supreme court of the United States in the case of *Lewis* v. *United States, supra,* as follows: "And it appears to be well settled that, where the personal presence [of the defendant] is necessary in point of law, the record must show the fact." Again, in the case of *State* v. *De Lea,* 36 Mont. 531, 93 Pac. 814, this court, speaking through Mr. Justice Holloway, says: "The Penal Code, section 2141, provides that the defendant, if charged with a felony, must be present when the verdict is received; and it is generally held, and we think correctly, that this fact must affirmatively appear." To the same effect is *State* v. *Hall,* 55 Mont. 182, 175 Pac. 267.

The rule that the presence of the defendant must appear from the record is thus stated in 16 Corpus Juris, page 814: "As a general rule the presence of defendant during a trial for felony must appear from the record, and generally such presence cannot be presumed; but if the record shows defendant's presence at the commencement or at any other stage of the trial, his presence during subsequent stages thereof will be presumed, in the absence of evidence to the contrary, although the fact is not formally stated. A failure of the record to show the personal presence of defendant during the trial will work a reversal of the judgment of conviction." This text is supported by numerous authorities. To the same effect see *Ball* v. *United States,* 140 U. S. 118, 35 L. Ed. 377, 11 Sup. Ct. Rep. 761 [see, also, Rose's U. S. Notes]; *Southerland* v. *State,* 176 Ind. 493, 96 N. E. 583; *Humphrey* v. *State,* 3 Okl. Cr. 504, 139 Am. St. Rep. 972, 106 Pac. 978; *State* v. *Wood,* 17 Iowa, 18; *Smith* v. *State,* 60 Ga. 430; *Grimm* v.

*People,* 14 Mich. 300; *Stephens* v. *People,* 19 N. Y. 549; *Fight* v. *State,* 28 Am. Dec. 631, note.

What is said by the court in the case of *Peters* v. *United States,* 94 Fed. 138, 36 C. C. A. 116, in relation to the record which ought to be kept is so peculiarly applicable herein that we quote therefrom as follows: "No principle of law, relating to criminal procedure, is better settled than that, in felony cases, nothing should be done in the absence of the prisoner. It is his unquestioned right 'to be confronted with his accusers and witnesses.' He has the legal right to be present when the jury are hearing his case, and at all times during the proceeding of the trial, when anything is done which in any manner affects his right; and, as a general rule, it is undoubtedly true that, when his personal presence is necessary to protect his rights, the record ought to show the fact of his presence. * * * It is the duty of clerks to see that the record speaks the truth concerning this fact as well as others occurring during the trial. A strict observance of these rules by the ministerial officers charged with this duty would certainly tend to relieve the courts of much trouble and annoyance. But what must the record show? What entry must be made? In general terms, it may be stated that the minutes of the court should affirmatively show everything which is essential to the validity of a criminal trial. The record of each day should show the presence of the court and its officers, of the respective attorneys, of the defendant, and of the jury, and then state the proceedings in the order of their occurrence. We must not be understood as intimating that, if the proceedings are not entered in this precise form, the record would be defective, but simply as suggesting a proper form of keeping the minutes. Every case must, of course, stand or fall by its own particular facts, as shown by the record. When the record does affirmatively show that the defendant was present, it is unnecessary to repeat that fact 'at every step' which is taken during the day. It would be absurd to require that every time a witness is sworn, a motion made, a ruling announced,

[65 Mont. 51.]

an exception noted, an instruction given, leave of the court for a juror to retire in charge of an officer for a few minutes, or any other step taken, an entry in the journal must affirmatively show that 'the defendant was then and there personally present.' The law never requires, even in a criminal trial, vain and useless things to be done.''

Let us now look at the record herein to ascertain the facts [4] upon which this contention of the defendant is made. It appears that the trial of this case began on May 27 and ended on May 31, 1921. The following are all of the minute entries for May 27, to-wit: ''Friday, the 27th day of May, 1921. No. 1. *State of Montana* v. *L. E. Reed.* Henry C. Smith is entered as associate counsel for the state. Matter of drawing jury to try cause of action taken up by the court. Return of sheriff shows that E. D. McElvain could not be found in Golden Valley County. F. C. Metzger is excused by the court on the grounds that he is bondsman for the accused, L. E. Reed. Clint Bramblet excused as juror until 9:30 A. M. May 31. Court adjourned until 1:30 P. M. Court reconvened at 1:30 P. M. All court officers present. Examination of jurors continued. Following jurors impanelled and sworn: [Here follows the names of the twelve jurors]. Hearing had to the court. Following witnesses sworn. [Here follows the names of a number of persons, but the defendant's name is not mentioned.] Wm. Gredt called to stand and testified. Court orders recess from 3:00 P. M. until 3:15 P. M. Dr. R. W. Appleman called to stand and testified. Ben Plocker called to stand and testified. County Attorney Charles W. Noyes sworn and testified. Arthur Rundle called to stand and testified. Court adjourned until Saturday May 28, 9:30 A. M.''

The following is the entire minute entries for May 28, 1921: ''Saturday the 28th day of May, 1921. Court reconvened at 9:30 A. M. pursuant to adjournment. All court officers present; Hon. George A. Horkan, presiding. No. 1. *State of Montana* v. *L. E. Reed.* Trial of L. T. Reed continued. Arthur Rundle recalled to the stand and testified.'' This is followed

by the statement that certain other witnesss, twelve in number, were called to the stand and testified. Then appears the following minute entry: "State rests its case." The next minute entry appearing is the following: "Defendant, L. E. Reed, called to witness-stand. Court recessed until 7:30 P. M. Defendant L. E. Reed recalled to witness-stand. Defense rests. No rebuttal by plaintiff. Recess taken at 8:15 P. M. until 9 P. M. to give counsel opportunity to prepare instructions. All witnesses excused from further waiting upon this court. Instructions given to the jury at 9:30 P. M. Court adjourned until 9 o'clock A. M. Tuesday, May 31, 1921."

The following are all of the minute entries pertaining to the proceedings had on May 31, to-wit: "Tuesday the 31st day of May, 1921. No. 1, *State of Montana* v. *L. E. Reed.* Continuation of *State of Montana* v. *L. E. Reed.* Argument had to the jury. Court recessed until 1:30 P. M. Court reconvened at 1:30 P. M. Argument continued in case No. 1. *State of Montana* v. *L. E. Reed.* Case given to the jury at 3:30 P. M. Jury returned verdict at 7:30 P. M. of murder in the second degree, and left the fixing of sentence to the court. Defendant given into the custody of the sheriff and Friday June 3, 1921, at 2 o'clock P. M. set for date of pronouncing sentence."

It further appears that the defendant was brought into court, and judgment pronounced on June 3, 1921. It will be observed that in so far as the minutes of the court affirmatively show, the defendant was present but once during his trial, and that was when he gave testimony in his own behalf. It is true that the record discloses that the defendant was remanded to the custody of the sheriff on the same day upon which the verdict was returned, but it cannot be fairly inferred from the language used that the defendant was present at the time of the rendition of the verdict. It is also true that the defendant in his testimony says that he heard certain statements in the testimony given by four of the state's witnesses, but the trial had begun before any witnesses testified.

There is nothing whatsoever in the minutes of that part of the trial had on May 27 from which it appears affirmatively that the defendant was present. Neither is there anything therein from which it may be reasonably inferred that he was present. Neither does it affirmatively appear, and there is nothing said therein from which it may be reasonably inferred, that defendant's counsel was present on that day. In so far as the record discloses, the provisions of sections 12017 and 12019, Revised Codes of 1921, *supra*, were not observed in the trial of this case. But it is argued that the presumption must prevail that "official duty has been regularly performed," and that "the law has been obeyed." (Sec. 10606, Rev. Codes 1921.)

But the law makes it the duty of the clerk of the court to keep a record of the proceedings of the court (sec. 4815, subd. 5, Rev. Codes 1921), and if the clerk performed this duty, then we must conclude that the defendant was not present throughout the entire·trial. We are not unmindful of the provisions of section 12125, Revised Codes of 1921, that "After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions, which do not affect the substantial rights of the parties." The presence of the defendant at his trial is a [5] matter which does affect the substantial rights of the·parties, both plaintiff and defendant. The function of the court is to interpret the law, not to make it. Section 12125, *supra*, does not authorize this court to ignore the provisions of our Constitution or to disregard all other statutory enactments. This record presents a most remarkable situation. If the intention was to utterly ignore the plain provisions of the law relating to the keeping of a record of the proceedings of this trial, then indeed, the effort has attained nearly the maximum of success. What was said by Mr. Justice Holloway in commenting on the minutes of the court, in the case of *State v. De Lea, supra,* is applicable here: "A studied effort to ignore

the law could hardly have been productive of a more defective record.''

The court's opinion in the case of *Humphrey* v. *State, supra,* is peculiarly applicable herein, and, without expressing any opinion as to the guilt or innocence of this defendant, we quote therefrom as follows: ''It may appear technical to reverse the case for the failure of the record to show the presence of the defendant, when in all probability the defendant was present at each step taken during the trial. Courts of last resort must establish precedents under which innocent men are to be tried. The law presumes every man innocent, and this presumption clings to him until overcome by competent evidence in a fair trial conducted according to law. Even though the evidence in this case is sufficient to warrant the verdict of guilty, yet we must not deprive * * * an innocent man of any substantial right. It is not the fault of appellate courts when such a precedent must be declared in a case where the proof shows the defendant guilty. The fault, if any there be, is with the trial court, the clerk * * * in their failure to have the record speak the truth.'' The contention of the defendant in this regard must be sustained.

Third. It is next contended that the court erred in admitting over defendant's objection certain testimony offered by the state. Consideration of these assignments necessitates a review of part of the evidence herein. On May 2, 1920, the defendant shot and killed the deceased. The homicide is admitted, and the defense of self-defense is made. At the time of the homicide the defendant resided on the southeast quarter of section 14, and then held under lease railroad section No. 25. The deceased resided upon the southeast quarter of section 24. All of this land is in the same township. A county road extended along the northern boundary of sections 22, 23 and 24 in this township. A trail or road angled across sections 22 and 23, and thence across section 25. The easterly half of section 24 was owned by the Barron estate. This estate land was fenced some time prior to the fencing of section 25. The land of deceased was likewise

fenced prior to the fencing of section 25, and, in building the
fence on the south side of the land of the deceased, he placed
the same about fifteen feet north of his southern boundary
line. In 1919 the defendant constructed a fence along the
westerly, southerly and easterly side of section 25, utilizing the
fence above mentioned of the Barron estate and the deceased
for the fence along the northern boundary of section 25, and
in building the fence along the east side the defendant at-
tached the northern end thereof to the corner of deceased's
fence. No gates were left in this fence built by defendant,
and the trail or road crossing the section (25) was closed.
Due to the closing of this road and the building of the fences,
and other causes, bad feeling existed between the defendant
and deceased. Defendant had accused deceased of cutting the
wires on his fence, and had made some threats against de-
ceased.

On the day of the homicide, some of the horses belonging to
the deceased were upon section 25. The defendant went from
his place of residence, riding a horse, and proceeded to drive
these horses off this section. He had a rifle tied to his sad-
dle. Defendant testified that, as he was driving these horses
off, the deceased came to where defendant was; that deceased
was on foot, and carried a single-barrel shotgun in his hand;
that defendant continued driving the horses, and deceased
came along with defendant; that after going some distance the
deceased lay down behind a small mound, and leveled the shot-
gun at defendant; that thereupon defendant got off his horse,
untied his rifle, and shot deceased. The shotgun was found
lying about an arm's length from the body of the deceased.
It was cocked, and the muzzle was filled with mud.

A mass of testimony was admitted, over defendant's objec-
[6] tion, tending to show the length of time the road or
trail across section 25, had been traveled prior to the time
the defendant closed it; that defendant had placed a part of
his fence upon the land of the deceased; that the defendant
had been requested to grant permission to certain persons to

travel across section 25 after it was fenced, but such permission was denied; and that certain witnesses had remonstrated with defendant about closing the road across section 25, but without avail. This evidence was not pertinent to any issue before the jury. The question at issue was not, whether the defendant had illegally fenced a public highway, or whether he had trespassed upon the land of another by placing a fence thereon, or whether he had shown himself to be ungenerous or unneighborly in refusing permission to travel over the land leased by him; but the question at issue was whether the defendant was guilty of unlawfully taking the life of the deceased. This testimony should have been excluded and its admission constituted prejudicial error. (*People* v. *Wright*, 144 Cal. 161, 77 Pac. 877.)

During the presentation of the state's case, a number of [7] witnesses testified that the reputation of the defendant for violence, vindictiveness and quarrelsomeness was bad. No objection was made to the admission of this testimony, but it is now assigned as error. Certainly, if appropriate objection had been made, the trial court then should, and doubtless would, have sustained the same, but, the testimony having gone in without objection, the defendant cannot now be heard to complain thereof. (*State* v. *Hill*, 46 Mont. 24, 126 Pac. 41; 8 C. J., sec. 742, p. 636.)

Fourth. It is next urged that the evidence is insufficient to support the verdict. In view of our conclusions hereinbefore set forth, we deem it unnecessary to express any opinion upon this phase of the case.

Fifth. Counsel urge that the judgment should be reversed [8] because the court failed to give a certain special instruction to the jury. A similar situation arose in the case of *State* v. *Stone, supra,* and what is said in that case fully answers defendant's contention herein, *viz.:* "It does not appear from the record that objection was made during the trial to any portion of the charge, or that any special instructions requested were refused. So far as appears to this court, the

entire charge was satisfactory to counsel and sufficiently comprehensive to cover every phase of the case. Having made no objection to any portion of it, nor to any action of the court in connection with the settlement of it during the trial, counsel cannot now complain, either of any error therein, or of any omission by the court to submit any special instruction.''

We recommend that the judgment and order denying the defendant's motion for a new trial be reversed, and the cause remanded to the district court of Golden Valley county for a new trial.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment and order appealed from are reversed and the cause is remanded to the district court of Golden Valley county for a new trial.

*Reversed.*